UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MICHAEL MURRAY,  :
                Plaintiff,  :
                  :
v.  :  **OPINION AND ORDER**
                  :
ORANGE COUNTY; ANTHONY MELE;  :  18 CV 634 (VB)
SERGEANT A. HERNANDEZ; and NEW  :
YORK STATE COMMISSION OF  :
CORRECTION,  :
                Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Michael Murray, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging defendants Orange County, Correction Administrator Anthony Mele,[1] Sergeant ("Sgt.") Angel Hernandez, and the New York State Commission of Correction ("COC"),[2] violated plaintiff's constitutional rights during his incarceration at Orange County Correctional Facility ("OCCF").

    Now pending is defendants' unopposed motion to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). (Doc. #38). Plaintiff failed to oppose the motion, despite the Court's sua sponte granting him an extension of time to do so. (Doc. #45). Therefore, by Order dated April 24, 2019, the Court deemed the motion fully submitted and unopposed. (Doc. #46).

    For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]     Incorrectly sued herein as "Anthony Miele."

[2]     Incorrectly sued herein as "the New York State Commission of Corrections."

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

At all relevant times, plaintiff was a pretrial detainee at OCCF.

In October 2017, plaintiff alleges he began to work as a porter at OCCF, earning $28 per week. Plaintiff does not describe his job duties or the work assignment program generally.

At the same time, plaintiff alleges he suffered from "disabilities of hypoxic brain damage, PTSD, and keloid scars" and was not receiving "necessary medical care" for these conditions and possibly others. (Doc. #37 ("SAC") at 14, 18).[3] Plaintiff alleges he filed "dozens of sick call slips and requests to file grievances" in an effort to obtain medical attention. (Id. at 14–15). According to plaintiff, OCCF officials delayed providing grievance forms and failed to take any action in response to plaintiff's complaints.

Plaintiff wrote directly to COC, the agency charged with oversight of local and state correctional facilities, about his "lack of medical treatment," in a letter dated January 3, 2018. (SAC at 15). COC responded in a letter dated January 11, 2018, informing plaintiff that his medical records reflected he was receiving regular and adequate care.

According to plaintiff, also on January 11, 2018, someone from COC called Mele, the corrections administrator, regarding plaintiff's medical care. Plaintiff alleges that, after the telephone call, Mele instructed Sgt. Delapia to fire plaintiff, stating "why is he on my payroll if he is disabled?" (SAC at 15).

---

[3] "SAC at __" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

On January 13, 2018, Sgt. Delapia allegedly fired plaintiff, telling plaintiff that he "must be 'too disabled' to work . . . if he was writing the commission." (SAC at 16). Plaintiff claims he was given no other reason for his termination.

On January 15, 2018, plaintiff alleges he wrote to COC to complain not only about his inadequate medical care but also about his termination. COC replied in a letter dated January 19, 2018, advising plaintiff to follow grievance procedures.

On January 26, 2018, Sgt. Kizka, a non-party, told plaintiff that COC contacted Mele again regarding plaintiff's complaints, and as a result, plaintiff was being moved to another housing unit. According to plaintiff, Sgt. Hernandez and an unnamed mental health employee had already "administratively" moved plaintiff to the mental health unit or "the box," a housing unit to which plaintiff did not want to be transferred. (SAC at 16). However, Sgt. Hernandez allegedly told plaintiff he would not "physically" transfer plaintiff and his belongings if plaintiff stopped writing COC. (Id.). Sgt. Hernandez allegedly threatened plaintiff, saying, "Cut your shit of writing the commission or your disabilities would be risk in the box or the mental health unit and you might suffer permanent mental harm." (Id. at 16–17). Plaintiff alleges Sgt. Hernandez knew such a transition would exacerbate plaintiff's PTSD. According to plaintiff, this conversation took place on January 26, 2018, in Housing Block Charlie, at around 1:20 p.m.

Plaintiff claims Sgt. Hernandez monitored plaintiff's mail to ensure he did not write to COC, and plaintiff alleges he compiled and stopped writing.

**BACKGROUND**

I.  Standard of Review

In deciding a motion to dismiss, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in Ashcroft v. Iqbal, 556 U.S.

3

662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe a pro se litigant's submissions and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges a civil rights violation. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

4

II.     Retaliation Claims

Liberally construed, plaintiff brings two First Amendment retaliation claims. He alleges that in retaliation for filing grievances and sending letters to COC, (i) Mele fired plaintiff from his job as a porter, and (ii) Sgt. Hernandez threatened to move plaintiff to the mental health unit to trigger his PTSD.

To "sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)) (internal quotation omitted). Courts must examine prisoners' retaliation claims with skepticism and care because such claims are "easily fabricated and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d at 491).

As defendants recognize here, filing a grievance is protected speech under the First Amendment. Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996). Plaintiff therefore satisfies the first element of a retaliation claim.

   A.    Retaliatory Termination

Defendants argue plaintiff's termination as a porter does not rise to retaliation in violation of the First Amendment, because plaintiff fails to allege sufficient facts to suggest a causal connection between his grievances and his termination.[4]

---

[4]     Defendants also argue plaintiff fails to state a claim because plaintiff has no constitutionally protected property interest in a prison job. To the extent plaintiff brings a due process claim, the Court agrees with defendants. However, plaintiff alleges he was fired in

The Court disagrees.

To satisfy the causal connection element of a retaliation claim, a plaintiff must allege facts "sufficient to support the inference that the speech played a substantial part in the adverse action." Davis v. Goord, 320 F.3d at 354. Such a causal connection may be shown when the protected activity is followed closely in time by the adverse action. See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (holding passage of six months between the protected activity and alleged retaliatory action was not too long to support an inference of causal connection). Allegations of prior good behavior may also provide circumstantial evidence of retaliation. Colon v. Coughlin, 58 F.3d 865, 872–73 (2d Cir. 1995). Direct evidence of retaliation, namely, a defendant's "alleged admission of the existence of a retaliatory scheme," is an even stronger indication of a causal connection. Id.

Here, plaintiff alleges sufficient facts to suggest plaintiff's grievances were a substantial factor in his termination. Plaintiff alleges Sgt. Delapia told him directly that "he must be 'too disabled' to work . . . if he was writing the commission"—a sentiment which could indicate that plaintiff's letters to COC were the reason for his termination. (SAC at 16). While not quite an admission of a retaliatory scheme, this statement could explain Mele's motivations in terminating plaintiff. In addition, plaintiff alleges his termination was close in time to his protected conduct—namely, he was fired several days after defendants concede COC received his letter on January 9, 2018. (Doc. #40 ("Def. Br.") at 12 n.3). Plaintiff also alleges his prior successful work history was successful, and that Mele had no reason to fire plaintiff: plaintiff's

---

retaliation for exercising his First Amendment rights, and therefore plaintiff need not allege a deprivation of a protected liberty or property interest under the due process clause. Franco v. Kelly, 854 F.2d 584, 589 (S.D.N.Y. 1988) (A retaliation claim "is not one that relies . . . on the procedural dictates of the Due Process Clause."). Therefore, plaintiff's lack of a protected property interest in his prison job is irrelevant here.

medical conditions did not interfere with his ability to work as a porter and he had never received negative feedback.

Defendants argue plaintiff contacted COC only after he was fired. However, plaintiff clearly alleges he contacted COC on January 3, 2018; defendants concede COC received the letter on January 9, 2018; and plaintiff alleges he was terminated on January 13, 2018.

Furthermore, defendants assert COC did not respond to plaintiff until after he was fired. The date that COC responded to plaintiff, however, is immaterial for purposes of the causal connection analysis. The only dates that are material here are the dates COC received plaintiff's letter and called Mele about plaintiff's complaint. At this stage of the case, plaintiff's allegations are sufficient to suggest a causal connection between his protected conduct and his termination.

Accordingly, plaintiff's First Amendment retaliation claim against Mele in connection with plaintiff's termination may proceed.

B. Threatened Move to the Mental Health Unit

Defendants argue Sgt. Hernandez's alleged threat to move plaintiff to the mental health unit cannot, as a matter of law, support a claim for First Amendment retaliation, because Sgt. Hernandez's verbal threat does not constitute an adverse action.

The Court disagrees.

An adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Davis v. Goord, 320 F.3d at 353 (citation omitted). Retaliatory acts that fail to meet this standard are "simply de minimis and therefore outside the ambit of constitutional protection." Id. Courts tailor the inquiry "to the different circumstances in which retaliation claims arise, bearing in mind that

7

prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." Id. (internal quotation omitted).

Verbal threats may constitute an adverse action if they are sufficiently specific and direct. Mateo v. Fischer, 682 F. Supp. 2d 423, 435 (S.D.N.Y. 2010). For instance, courts have found the following alleged threats to be insufficient: "wait till he puts his hands on me," and "one day he and I will party," see id.; and "we [are] going to get you, you better drop the suit," Bartley v. Collins, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006).[5]

Courts have found the following threats sufficiently alleged an adverse action: "[m]y baby father's boys are here in the jail! I'm from Mount Vernon, if you don't know you better ask about [J]ermaine, so file your grievance if you want and see what happens to your white ass," see White v. Westchester Cnty., 2018 WL 6726555, at *17 (S.D.N.Y. Dec. 21, 2018), and when plaintiff requested a transfer, defendant said he "would retaliate and make sure other officers in any facility [plaintiff] is transferred to retaliate as well," Perkins v. Perez, 2019 WL 1244495, at *14 (S.D.N.Y. Mar. 18, 2019).

Here, Sgt. Hernandez's alleged threat was specific and direct: namely, that if plaintiff wrote to COC again, Sgt. Hernandez would move plaintiff to the mental health unit or the box where plaintiff "might suffer permanent mental harm." (SAC at 16–17). This allegation suggests Sgt. Hernandez intended to trigger plaintiff's PTSD by moving him to the mental health unit. Indeed, plaintiff claims Sgt. Hernandez "administratively" transferred him to the mental health unit—a gesture that shows the threat's sincerity and imminence. Plaintiff also alleges where (Housing Block Charlie) and when (1:20 p.m.) Sgt. Hernandez allegedly threatened him.

---

[5] Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

8

Therefore, plaintiff plausibly has alleged Sgt. Hernandez's alleged threat constitutes an adverse action.

Accordingly, plaintiff's First Amendment retaliation claim against Sgt. Hernandez in connection with the threatened transfer may proceed.

III. ADA Claim

Defendants argue plaintiff fails to allege his termination violated the ADA because he does not claim he was terminated on the basis of his disability.

The Court disagrees.

Inmates in state prisons are protected by Title II of the ADA, which provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998). To assert a claim under the ADA, an inmate must allege that he "was denied the opportunity to participate in or benefit from [the prison administration's] services, programs, or activities or [the prison administration] otherwise discriminated against him by reason of his disability." See Davis v. Collado, 2018 WL 4757966, at *7 (S.D.N.Y. Sept. 30, 2018) (alterations in original). Courts have found prison work assignments may constitute services, programs, or activities under Title II. See, e.g., Perez v. Arnone, 2015 WL 12979148, at *5 (D. Conn. Mar. 26, 2015).

Plaintiff plausibly pleads, in the alternative, that if he was not fired in retaliation for writing to COC, he was terminated because of his disability. He alleges he is disabled because he suffers from brain damage, PTSD, and keloid scars. Unsatisfied with his medical care, he allegedly filed grievances and wrote to COC. According to plaintiff, Sgt. Delapia terminated

9

him "on Correction Administrator Miele's [sic] instruction because he must be 'too disabled' to work if he was writing the commission." (SAC at 18). Drawing all inferences in plaintiff's favor, such a statement could indicate that an OCCF official recognized plaintiff's disabilities and refused to allow a seriously disabled inmate to work as a porter. Therefore, plaintiff has plausibly alleged he was denied access to a prison service, program, or benefit because of his disabilities.

Accordingly, plaintiff's ADA claim against Orange County may proceed.[6]

IV.    Denial of Access to the Courts

Defendants argue plaintiff's allegations regarding his access to the law library and difficulty in obtaining grievance forms fail to state a claim for denial of access to the courts.

The Court agrees.

While prisoners are guaranteed reasonable access to a law library as a part of their constitutional right of meaningful access to the courts, "the Constitution does not require unlimited and unrestricted access to a law library at the demand of a prisoner." Oliver v. Head Sherriff of Dep't & Div. of Corr. of Nassau Cnty., 2008 WL 238577, at *2 (E.D.N.Y. Jan. 28, 2008). Allegations of delays affecting research or communication with the courts do not violate this constitutional right. Jermosen v. Coughlin, 1995 WL 144155, at *4 (S.D.N.Y. Mar. 30, 1995). Furthermore, to state a claim, plaintiff must plausibly allege a defendant caused plaintiff to suffer "actual injury." Davis v. Goord, 320 F.3d at 351.

---

[6]    Because Mele and Sgt. Hernandez are not sued in their official capacities, plaintiff's ADA claim only proceeds against Orange County. Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (a Title II ADA claim cannot proceed against defendants in their individual capacities).

Here, plaintiff merely alleges his time in the law library was insufficient. He does not allege facts showing he suffered any actual injury during his pursuit of legal relief.

Plaintiff's claim concerning the adequacy of the grievance system also fails, beause "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [Section] 1983 claim." Alvarado v. Westchester Cnty., 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014). Therefore, plaintiff's allegations concerning the adequacy of the grievance system do not implicate a constitutional violation.

Accordingly, plaintiff's claim for denial of access to the courts concerning access to the law library and adequacy of the grievance system are dismissed.

V.  Violations of the Administrative Procedure Act

Defendants argue plaintiff also fails, as a matter of law, to state a claim for violation of the Administrative Procedures Act ("APA").

The Court agrees.

The APA permits "[a] person suffering a legal wrong because of agency action, or adversely affected . . . by agency action" to pursue "[a]n action in a court of the United States." 5 U.S.C. § 702. Neither Orange County nor COC is an agency of the United States within the meaning of the APA. Therefore, as a matter of law, plaintiff cannot proceed under the APA.

Accordingly, plaintiff's APA claim is dismissed.

VI.  Monell Liability

Defendants argue plaintiff fails to state a Monell claim against Orange County.

The Court agrees.

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Therefore, to plausibly allege a Monell claim against Orange County, plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012). However, "[a] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct." Newton v. City of New York, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008).

Here, plaintiff makes no allegation that a policy or custom inflicted his constitutional injury; therefore, plaintiff fails to allege a Monell claim.

Accordingly, plaintiff's Monell claim against Orange County is dismissed.

VII. Exhaustion of Administrative Remedies

Defendants argue the Court should dismiss plaintiff's claims because he failed to exhaust administrative grievances as required by the Prisoner Litigation Reform Act ("PLRA").

The Court disagrees.

Because the PLRA's exhaustion requirement is not jurisdictional in nature, see Arnold v. Goetz, 245 F. Supp. 2d 527, 531 (S.D.N.Y. 2003) (collecting cases), plaintiff is not required to plead or demonstrate he exhausted administrative remedies in his complaint or that administrative remedies were not available to him. Ross v. Blake, 136 S. Ct. 1850, 1859 (2016). Rather, under Rule 12(b)(6), dismissal is only appropriate when, on the face of the complaint, it is clear plaintiff did not exhaust all his remedies, including all administrative appeals, before commencing the action. Woodford v. Ngo, 548 U.S. 81, 90–93 (2006).

12

At this early stage of the case, construing all interferences in plaintiff's favor, it is not clear from the face of the SAC that plaintiff failed to exhaust administrative remedies. However, if evidence later demonstrates plaintiff did not comply with the PLRA, defendants may raise this argument again.

VIII. Limitations on Relief

Defendants argue plaintiff's claim for compensatory damages for his alleged First Amendment violation is barred by the PLRA.

The Court disagrees.

PLRA's Section 1997e(e) states: "No Federal action may be brought by a prisoner confined in a . . . correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Section 1997e(e) does not "bar an award of compensatory damages for First Amendment violations," which allege "intangible deprivations of liberty and personal rights." Jones v. Annucci, 2018 WL 910594, at *8 (S.D.N.Y. Feb. 14, 2018) (collecting cases).

Because plaintiff has sufficiently stated a First Amendment violation, the PLRA does not bar plaintiff's claim for compensatory damages.

IX. Claims Against COC

Finally, the Court dismisses claims against COC, because the claims are barred by the Eleventh Amendment, which protects non-consenting states and their agencies from being sued in federal court by private individuals absent a state's waiver or a valid congressional override. Washpon v. Parr, 2007 WL 541964, at *1 (S.D.N.Y. Feb. 16, 2007) (citing Garcia v. State Univ. of N.Y. Health Sciences Ctr., 280 F.3d 98, 107 (2d Cir. 2001)). New York has not waived its

Eleventh Amendment immunity to suit, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. Id.

Accordingly, all claims against COC are dismissed.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's only surviving claims are (i) First Amendment retaliation claims against defendants Mele and Hernandez in connection with plaintiff's termination from his porter job and his threatened move to the mental health unit, and (ii) an ADA claim against Orange County.

Mele, Hernandez, and Orange County shall file an answer by August 23, 2019.

All other claims are dismissed.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to (i) terminate the motion (Doc. #38) and (ii) terminate defendant the New York State Commission of Correction.

Dated: August 9, 2019
　　　White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge